## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ANISSA REYES *on behalf of herself and all others similarly situated,*** | ) | Case No.  6:20-cv-607 |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CLASS ACTION COMPLAINT** |
| | ) | **AND DEMAND FOR JURY** |
| **THE UNIVERSITY OF TEXAS AT AUSTIN,** | ) | **TRIAL** |
| **AND THE BOARD OF REGENTS OF THE** | ) | |
| **UNIVERSITY OF TEXAS SYSTEM,** | ) | |
| | ) | |
| **DEFENDANTS.** | | |

Plaintiff, Anissa Reyes ("Plaintiff"), by and through her undersigned counsel, brings this action against Defendants, the University of Texas at Austin (the "University") and The Board of Regents of The University of Texas System (the "Regents" or, collectively with the University, "Defendants"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

### NATURE OF THE ACTION

1.    This is a class action lawsuit on behalf of all persons who paid or will pay tuition to attend The University of Texas at Austin for an in-person, hands-on education for the Spring 2020 semester and had their course work moved to remote online learning. Such persons paid all or part of the tuition for the semester that ranged from approximately $1,604 to $20,642 for an undergraduate student and ranged from approximately $1,177 to $14,014 for a graduate student. The University of Texas at Austin has not refunded any amount of the tuition even though it has cancelled in-person classes as of March 13, 2020.

2.      Because of the University's response to the Coronavirus Disease 2019 ("COVID-19") pandemic, around mid-March 2020, the University ceased or severally limited any of the services or facilities that students traditionally had access to on campus.

3.      In short, Plaintiff and the members of the Class have paid tuition for a first-rate education and educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative, which alternative constitutes a decrease in value as compared to what was originally contracted for.

4.      As a result of the decrease in value, the University unlawfully seized and are in possession of property (funds) of the Plaintiff and Class members in the form of paid tuition.

5.      Plaintiff seeks, for herself and Class members, just compensation for the taking of the portion of tuition proportionate to the amount of time that remained in the Spring 2020 semester when the University switched to online distance learning.

6.      Plaintiff's counsel has sent a Freedom of Information Act (FOIA) requests to the University and Regents in order to, *inter alia*, gain access to the internal communications regarding issuing potential refunds and reimbursements to the students, and the ultimate denial of the same. If any information received proves relevant, Plaintiff shall amend the Complaint to incorporate.

<u>**PARTIES**</u>

7.      Plaintiff Anissa Reyes is a citizen of Texas.  She paid to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition for the Spring 2020 semester to enable her to obtain an in-person, on-campus educational experience, and enable her to participate in the activities and to utilize the services traditionally accessible to students on campus.  She has not been provided just compensation or a pro-rated refund of the tuition for her

in-person classes that were discontinued and moved online or the diminution or cessation of educational enrichment experiences associated with her classes and college experience.

8.      Defendant, The University of Texas at Austin, is a public research university in Austin, Texas, and is the flagship institution of the University of Texas System and is considered a state agency pursuant to Texas Education Code § 572.002(10)(B).

9.      The University offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate program includes students from many, if not all, of the states in the country.

10.      The University's principal campus is located in Austin, Texas.  Defendant is a citizen of Texas.

11.      The Board of Regents of the University of Texas System is the governing body for The University of Texas System pursuant to Texas Education Code §65.11. The Board is composed of nine members who are appointed by the Governor of Texas and confirmed by the Senate.

12.      The Regents are a constitutional corporate body operating within Travis County, Texas. The Regents is a citizen of Texas.

## JURISDICTION AND VENUE

13.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14.     This Court has personal jurisdiction over Defendants because Defendants maintain its principal places of business in this District.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this District.

## FACTUAL ALLEGATIONS.

16.     Plaintiff and Class Members paid tuition to attend classes and participate in enrichment activities at The University of Texas at Austin for the Spring 2020 semester.  The Spring 2020 semester at the University began on or about January 21, 2020 and ended on or around May 8, 2020.[1]

17.     Tuition at the University for the Spring 2020 Semester for an undergraduate student were as follows:

| | Hours | Architecture | Business | Communication | Education | Engineering | Fine Arts | Geosciences | Liberal Arts | Nat. Sciences | Nursing | Social Work | UG Studies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Texas Resident | 1 | 1,639 | 1,782 | 1,604 | 1,608 | 1,695 | 1,663 | 1,673 | 1,551 | 1,610 | 1,720 | 1,624 | 1,629 |
| | 2 | 2,021 | 2,197 | 1,977 | 1,980 | 2,090 | 2,047 | 2,062 | 1,913 | 1,984 | 2,119 | 2,001 | 2,007 |
| | 3 | 2,401 | 2,611 | 2,350 | 2,353 | 2,484 | 2,434 | 2,450 | 2,274 | 2,357 | 2,519 | 2,382 | 2,388 |
| | 4 | 2,782 | 3,024 | 2,722 | 2,725 | 2,877 | 2,820 | 2,839 | 2,634 | 2,732 | 2,919 | 2,757 | 2,764 |
| | 5 | 3,164 | 3,438 | 3,097 | 3,101 | 3,272 | 3,207 | 3,228 | 2,995 | 3,106 | 3,319 | 3,135 | 3,144 |
| | 6 | 3,543 | 3,854 | 3,468 | 3,473 | 3,665 | 3,593 | 3,617 | 3,354 | 3,479 | 3,718 | 3,513 | 3,524 |
| | 7 | 3,926 | 4,268 | 3,842 | 3,847 | 4,061 | 3,978 | 4,007 | 3,715 | 3,855 | 4,119 | 3,891 | 3,902 |
| | 8 | 4,361 | 4,742 | 4,268 | 4,274 | 4,510 | 4,421 | 4,451 | 4,127 | 4,281 | 4,576 | 4,322 | 4,334 |
| | 9 | 4,361 | 4,742 | 4,268 | 4,274 | 4,510 | 4,421 | 4,451 | 4,127 | 4,281 | 4,576 | 4,322 | 4,334 |
| | 10 | 4,361 | 4,742 | 4,268 | 4,274 | 4,510 | 4,421 | 4,451 | 4,127 | 4,281 | 4,576 | 4,322 | 4,334 |
| | 11 | 4,361 | 4,742 | 4,268 | 4,274 | 4,510 | 4,421 | 4,451 | 4,127 | 4,281 | 4,576 | 4,322 | 4,334 |
| | 12+ | 5,451 | 5,926 | 5,334 | 5,342 | 5,637 | 5,524 | 5,562 | 5,157 | 5,351 | 5,718 | 5,402 | 5,417 |
| Nonresident | 1 | 5,899 | 6,317 | 5,670 | 5,679 | 5,967 | 5,877 | 5,988 | 5,512 | 5,687 | 6,197 | 5,790 | 5,777 |
| | 2 | 7,275 | 7,790 | 6,989 | 7,004 | 7,357 | 7,245 | 7,381 | 6,796 | 7,013 | 7,642 | 7,139 | 7,122 |
| | 3 | 8,650 | 9,263 | 8,313 | 8,327 | 8,750 | 8,615 | 8,778 | 8,082 | 8,336 | 9,087 | 8,489 | 8,469 |
| | 4 | 10,024 | 10,734 | 9,633 | 9,652 | 10,138 | 9,983 | 10,175 | 9,365 | 9,667 | 10,529 | 9,837 | 9,815 |
| | 5 | 11,401 | 12,207 | 10,957 | 10,974 | 11,530 | 11,354 | 11,569 | 10,650 | 10,992 | 11,974 | 11,187 | 11,162 |
| | 6 | 12,774 | 13,678 | 12,275 | 12,297 | 12,920 | 12,722 | 12,963 | 11,934 | 12,318 | 13,420 | 12,537 | 12,506 |
| | 7 | 14,149 | 15,152 | 13,597 | 13,622 | 14,313 | 14,094 | 14,360 | 13,218 | 13,643 | 14,863 | 13,886 | 13,853 |
| | 8 | 15,721 | 16,833 | 15,106 | 15,137 | 15,901 | 15,656 | 15,956 | 14,687 | 15,156 | 16,514 | 15,428 | 15,393 |
| | 9 | 15,721 | 16,833 | 15,106 | 15,137 | 15,901 | 15,656 | 15,956 | 14,687 | 15,156 | 16,514 | 15,428 | 15,393 |
| | 10 | 15,721 | 16,833 | 15,106 | 15,137 | 15,901 | 15,656 | 15,956 | 14,687 | 15,156 | 16,514 | 15,428 | 15,393 |
| | 11 | 15,721 | 16,833 | 15,106 | 15,137 | 15,901 | 15,656 | 15,956 | 14,687 | 15,156 | 16,514 | 15,428 | 15,393 |
| | 12+ | 19,650 | 21,041 | 18,883 | 18,920 | 19,874 | 19,570 | 19,941 | 18,358 | 18,944 | 20,642 | 19,284 | 19,239 |

[2]

18.     Tuition at the University for the Spring 2020 semester for a graduate student were as follows:

[1] https://registrar.utexas.edu/calendars/19-20
[2] https://utexas.app.box.com/v/ug-tuition-19-20-long

4

| | Hours | Architecture | Business | Communication | Education | Engineering | Fine Arts | Geosciences | Information | Liberal Arts | Nat. Sciences | Nursing | Pharmacy | Public Affairs | Social Work |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Texas Resident** | 1 | 1,412 | 1,177 | 1,355 | 1,257 | 1,429 | 1,404 | 1,310 | 1,469 | 1,210 | 1,248 | 1,418 | 1,382 | 1,334 | 1,400 |
| | 2 | 1,985 | 1,653 | 1,903 | 1,766 | 2,008 | 1,973 | 1,841 | 2,066 | 1,701 | 1,755 | 1,992 | 1,913 | 1,876 | 1,969 |
| | 3 | 2,296 | 1,915 | 2,202 | 2,042 | 2,326 | 2,284 | 2,131 | 2,391 | 1,968 | 2,031 | 2,307 | 2,216 | 2,172 | 2,280 |
| | 4 | 2,874 | 2,477 | 2,852 | 2,645 | 3,011 | 2,956 | 2,758 | 3,094 | 2,546 | 2,630 | 2,985 | 2,867 | 2,810 | 2,951 |
| | 5 | 3,547 | 2,954 | 3,400 | 3,155 | 3,590 | 3,526 | 3,288 | 3,689 | 3,036 | 3,135 | 3,580 | 3,421 | 3,352 | 3,517 |
| | 6 | 3,807 | 3,171 | 3,650 | 3,386 | 3,855 | 3,784 | 3,530 | 3,962 | 3,259 | 3,365 | 3,820 | 3,673 | 3,598 | 3,776 |
| | 7 | 4,276 | 3,561 | 4,099 | 3,803 | 4,329 | 4,250 | 3,966 | 4,450 | 3,659 | 3,780 | 4,290 | 4,123 | 4,040 | 4,242 |
| | 8 | 5,004 | 4,168 | 4,797 | 4,452 | 5,067 | 4,976 | 4,641 | 5,207 | 4,284 | 4,424 | 5,024 | 4,827 | 4,728 | 4,965 |
| | 9 | 5,213 | 4,342 | 4,998 | 4,637 | 5,277 | 5,183 | 4,834 | 5,424 | 4,464 | 4,608 | 5,233 | 5,029 | 4,927 | 5,170 |
| | 10 | 5,679 | 4,725 | 5,441 | 5,047 | 5,747 | 5,642 | 5,262 | 5,906 | 4,857 | 5,014 | 5,697 | 5,472 | 5,362 | 5,629 |
| | 11 | 5,981 | 4,981 | 5,736 | 5,320 | 6,059 | 5,946 | 5,549 | 6,226 | 5,119 | 5,288 | 6,005 | 5,771 | 5,654 | 5,934 |
| | 12 | 6,239 | 5,194 | 5,980 | 5,549 | 6,318 | 6,202 | 5,785 | 6,493 | 5,340 | 5,514 | 6,262 | 6,016 | 5,896 | 6,188 |
| | 13 | 6,599 | 5,493 | 6,326 | 5,867 | 6,680 | 6,561 | 6,119 | 6,868 | 5,647 | 5,830 | 6,624 | 6,363 | 6,234 | 6,545 |
| | 14 | 6,855 | 5,707 | 6,571 | 6,096 | 6,942 | 6,818 | 6,357 | 7,136 | 5,866 | 6,057 | 6,882 | 6,612 | 6,477 | 6,800 |
| | 15 | 7,112 | 5,919 | 6,818 | 6,323 | 7,202 | 7,071 | 6,594 | 7,401 | 6,084 | 6,284 | 7,159 | 6,858 | 6,719 | 7,054 |
| **Nonresident** | 1 | 2,030 | 1,822 | 1,980 | 1,897 | 2,034 | 2,024 | 1,971 | 2,082 | 1,863 | 1,913 | 2,035 | 2,013 | 1,975 | 2,011 |
| | 2 | 3,184 | 2,860 | 3,108 | 2,978 | 3,191 | 3,173 | 3,093 | 3,269 | 2,922 | 2,999 | 3,194 | 3,162 | 3,100 | 3,156 |
| | 3 | 3,958 | 3,552 | 3,862 | 3,700 | 3,965 | 3,942 | 3,842 | 4,061 | 3,631 | 3,726 | 3,968 | 3,926 | 3,848 | 3,920 |
| | 4 | 4,922 | 4,418 | 4,800 | 4,601 | 4,930 | 4,901 | 4,778 | 5,048 | 4,515 | 4,634 | 4,934 | 4,885 | 4,786 | 4,874 |
| | 5 | 5,787 | 5,196 | 5,648 | 5,412 | 5,798 | 5,767 | 5,620 | 5,937 | 5,310 | 5,452 | 5,806 | 5,743 | 5,629 | 5,735 |
| | 6 | 6,849 | 6,148 | 6,680 | 6,404 | 6,861 | 6,822 | 6,649 | 7,026 | 6,284 | 6,448 | 6,866 | 6,794 | 6,661 | 6,784 |
| | 7 | 7,812 | 7,013 | 7,622 | 7,303 | 7,826 | 7,783 | 7,586 | 8,014 | 7,169 | 7,357 | 7,835 | 7,751 | 7,598 | 7,741 |
| | 8 | 8,968 | 8,050 | 8,750 | 8,385 | 8,985 | 8,934 | 8,708 | 9,201 | 8,226 | 8,444 | 8,992 | 8,896 | 8,723 | 8,885 |
| | 9 | 9,643 | 8,656 | 9,408 | 9,016 | 9,660 | 9,608 | 9,363 | 9,893 | 8,847 | 9,081 | 9,670 | 9,567 | 9,379 | 9,554 |
| | 10 | 10,408 | 9,343 | 10,155 | 9,730 | 10,426 | 10,367 | 10,105 | 10,678 | 9,548 | 9,800 | 10,438 | 10,326 | 10,124 | 10,312 |
| | 11 | 11,077 | 9,942 | 10,809 | 10,356 | 11,099 | 11,035 | 10,756 | 11,365 | 10,161 | 10,431 | 11,109 | 10,989 | 10,774 | 10,975 |
| | 12 | 11,651 | 10,457 | 11,368 | 10,893 | 11,674 | 11,607 | 11,312 | 11,954 | 10,687 | 10,970 | 11,683 | 11,559 | 11,332 | 11,543 |
| | 13 | 12,418 | 11,144 | 12,114 | 11,607 | 12,440 | 12,369 | 12,056 | 12,740 | 11,389 | 11,691 | 12,450 | 12,319 | 12,073 | 12,300 |
| | 14 | 12,799 | 11,487 | 12,487 | 11,966 | 12,823 | 12,749 | 12,427 | 13,131 | 11,741 | 12,049 | 12,834 | 12,697 | 12,447 | 12,680 |
| | 15 | 13,659 | 12,258 | 13,326 | 12,768 | 13,685 | 13,608 | 13,262 | 14,014 | 12,529 | 12,860 | 13,696 | 13,550 | 13,283 | 13,533 |

[3]

19.     Plaintiff and/or the members of the Class paid all or part of the applicable tuition for the benefit of on-campus, live, interactive instruction and an on campus educational experience throughout the entire Spring 2020 semester.

### ***In Response to COVID-19, the University Closed Campus, Preventing Access to its Facilities, Services, Housing, and Cancelled All In-Person Classes and Activities***

20.     In response to the COVID-19 pandemic, the University created a new section for its website to provide updates and answer frequently asked questions.[4]

21.     On March 13, 2020, the University announced that it was closing campus operations and cancelling all in-person classes immediately.[5]

22.     On March 15, 2020, the University announced that spring break was going to be extended by one week, that classes would start back on March 30, and that the University would

---

[3] https://utexas.app.box.com/v/grad-19-20-long
[4] https://coronavirus.utexas.edu/campus-announcements
[5] https://president.utexas.edu/messages-speeches-2020/covid19-identified-within-ut-community

teach as many classes as possible online. This announcement further advised that students who were unable to leave the campus must exercise social distancing at all times.[6]

23.    On or about March 17, 2020, the University announced that they will be moving <u>all</u> classes to remote online learning starting on March 30, 2020. The University also required students to move out of the residence halls and to return home.[7]

24.    In its March 17 announcement, the University also provided the following information regarding meetings and events on campus:

**Meetings and Events**

All on-campus programs, gatherings and events with more than 10 people through May 1 will be canceled, postponed or moved online. These include office or faculty meetings, student programs and religious or cultural celebrations in addition to all athletics events and public performances.

[8]

25.    In tacit acknowledgement that online remote learning, with limited to no enrichment activities, is a sub-par learning experience and is a "drastic change" from in-person education, the University posted the following:

---

[6] https://president.utexas.edu/messages-speeches-2020/ut-operations-update-march-15
[7] https://president.utexas.edu/messages-speeches-2020/moving-to-online-classes
[8] *Id.*

Impact on teaching evaluations

The drastic change in course delivery from face-to-face to online is expected to impact students' learning and may, therefore, alter course and instructor evaluation results. **All faculty** are strongly encouraged to document the challenges you encounter and how you worked to find solutions. We also strongly encourage you to engage the help of peers many of whom are skilled in online and remote instruction. The FIC and LAITS offer a number of resources as do many of the College and Schools' teaching and learning centers that will assist you as you prepare to move to distance instruction.[9]

26.     On March 20, 2020, the University closed all libraries on campus.[10]

27.     On March 25, 2020, the University announced that commencement and graduation would be postponed, and that there will be plans to hold a virtual commencement.[11]

28.     On March 27, 2020, the University announced that it was going to change the traditional in-person letter grading system to a Pass/Fail or Credit/No Credit system, stating:

- Online Classes Grading Policies: Undergraduate students will have the option of taking all classes Pass/Fail, and graduate students will have the option of taking all classes Credit/No Credit. Students have until May 29 to make this choice.[12]

29.     On April 14, 2020, the University announced that it would be moving all summer classes to remote online learning instead of in-person. In tacit acknowledgment that online learning is a sub-par education experience, the University reduced tuition for the Summer 2020 semester, advising students that:

---

[9] https://provost.utexas.edu/messages/covid-19-transition-online-instruction
[10] https://provost.utexas.edu/messages/update-faculty-resources-324
[11] https://coronavirus.utexas.edu/campus-announcements
[12] https://coronavirus.utexas.edu/campus-announcements

> To support your continued learning even through the COVID-19 crisis and help you remain on track to earn your degrees, the university will reduce tuition for undergraduate summer courses to 50 percent of the tuition rate for fall and spring semester courses. The summer rates had typically been 85 percent of those long-semester rates. [13]

30.     Though the University advised students that the reduction was to "support [their] continued learning," in tacit acknowledgment that remote online learning is not as motivational, engaging or beneficial as in-person classes, the University advised faculty members that the tuition reduction was to "<u>encourage</u> undergraduate students to continue learning" in the following announcement:

> To encourage undergraduate students to continue learning even during the COVID-19 crisis and to remain on track to earn their degrees, the university will reduce tuition for 2020 undergraduate summer courses to 50 percent of the tuition rate for fall and spring semester courses. The summer rates had typically been 85 percent of those long-semester rates. [14]

31.     The University has not held any in-person classes since March 13, 2020, which was just before the commencement of its spring break. Classes that have continued since then have only been offered in a remote online format with no in-person instruction or interaction. Further, many organizations, clubs and other enrichment activities were substantially diminished or cancelled in this same time period.

32.     The University has also unilaterally reduced the amount of education that the students paid tuition for by extending spring break by one week, consequently cancelling that week of education.

---

[13] https://president.utexas.edu/messages-speeches-2020/summer-instruction-and-other-mitigation-plans
[14] https://president.utexas.edu/messages-speeches-2020/mitigation-plans-during-covid-19-crisis

33.     Acknowledging that tuition is something that could be refundable, and further acknowledging that the decision regarding any such refund comes from the Regents, the University posted the following information:

> Tuition
>
> The UT System administration has advised all UT institutions across Texas that there will be no reimbursement of tuition in the spring 2020 semester since coursework and instruction are continuing, and students who complete the courses will earn their full credit. UT System reviewed the state education code in making this determination.[15]

### *The University's Online Courses Are Subpar to In-Person Instruction, For Which Plaintiff and the Class Members Contracted with the University to Receive by Paying Tuition*

34.     Students, such as Plaintiff, attending The University of Texas at Austin's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in the University's in-person educational program.

35.     On its website, the University markets its on-campus experience as a benefit of enrollment by stating:

---

[15] https://coronavirus.utexas.edu/refunds-reimbursements#ac

Spend just a minute on our campus and you'll quickly see how The University of Texas at Austin is an immense and beautiful world all its own. And with our dozens of museums, libraries, centers, institutes and special venues spread across the campus and the city, each with its own unique exhibits and programming, you'll never be bored. Designed to enhance the experience of not just current students, faculty, and staff but also community members and visitors from around the world, our many campus destinations will educate, delight and amaze.

[16]



## Explore Your Passions

Thousands of events, from concerts and film screenings to readings and lectures. More than 1,100 student organizations. Incredible facilities and special attractions. And it's all set in the heart of one of the world's greatest cities. Welcome home.

[17]

Imagine a city bursting with an entrepreneurial spirit, a commitment to personal freedom and a passion for unearthing new discoveries. Add a vibrant, internationally renowned music, film and art scene, along with a thriving economy that leads the way in the technology, engineering and health care industries. Throw in a glittering lake running through the center of the city, big blue skies, gleaming Texas sunshine and the natural beauty of the surrounding Hill Country. Underline all of that with an open-minded sense of community, a serious commitment to breakfast tacos and a deep appreciation for all kinds of people and all kinds of dreams, and you've got Austin, Texas — one of the most amazing places in the world, and the city we're proud to call home.

[18]

  36. The online learning options being offered to the University's students are sub-par in practically every aspect as compared to what the educational experience afforded Plaintiff and

---

[16] https://www.utexas.edu/campus-life/campus-destinations
[17] *Id.*
[18] https://www.utexas.edu/campus-life/life-in-austin

the members of the Class once was.  During the online portion of the Spring 2020 semester, the University offered some classes through Zoom, and others were pre-recorded for students to watch on their own. Attendance was not mandatory for those conducted via Zoom. Therefore, there was a lack of classroom interaction among teachers and students and among students that is instrumental in interpersonal skill development.

37.     Further, many of the "1,100 student organizations" – a substantial element of the on-campus academic experience offered by the University -- were substantially curtailed, cancelled, or effectively cancelled as a result of the closure.

38.     The online formats being used by the University does not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams. Further, the ability to receive a Pass/Fail grade rather than a letter grade, and the lack of mandatory attendance, provides educational leniency that the students would not otherwise have with the in-person letter grading education that was paid for and expected.

39.     Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The students were also deprived of the opportunity to participate in the student organizations which add another dimension to the benefits of the on-campus experience.

40.     Access to facilities such as libraries, laboratories, computer labs, gymnasiums, and study rooms, are also integral to a college education, and access to the myriad activities offered by campus life fosters social development and independence, and networking for future careers, all substantial and materials parts of the basis upon which the University can charge the tuition it charges, are not being provided.

41.     The University has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Spring 2020 semester for the period it moved to subpar on-line distance learning.

42.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition they paid for the Spring 2020 semester for the remaining days of the semester after classes moved from in-person to online and facilities were closed or severally limited.

### *In Response to the COVID-19 Pandemic, the University Seized Plaintiff's and the Class Members' Property Without Notice or Due Process.*

43.     When Defendant elected to seize Plaintiff's and the Class members' property, they did so without notice or due process.

44.     The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, prohibits states from taking private property for public use without just compensation.

45.     Core common law property rights that predate the Constitution are protected by the Takings Clause.

46.     For hundreds of years, the common law has recognized that there is a property right by an owner in funds held in an account managed by another.

47.     The common law rule is that when monies are paid in anticipation of receiving some service, but circumstances thereafter render it impossible for those services to be provided, the recipient is precluded from unjustly enriching themselves by seizing and retaining the proceeds.

48.     Based on these common law rules protected by the Constitution, Plaintiff and the Class have a protected property right in all sums they paid to the University for which they received nothing, or significantly less than what they bargained for, in return.

49.    Defendant elected to seize Plaintiff's and the Class members' property under the color of state law, without notice or due process, which failure to provide the same violates due process standards set forth in the Texas and United Stated Constitutions.

50.    Defendant is obligated to uphold the Texas and United States Constitutions, as they are an agency of the state under Texas Education Code § 572.002(10)(B).

51.    No statute, rule, or practice could authorize Defendant to withhold that property from Plaintiff and the Class without violating the Takings Clause of the Fifth Amendment.

52.    Defendant's conduct violated the Texas Constitution, Article I, §§ 17 and 19, and the United States Constitution's Fifth and Fourteenth Amendments.

53.    Plaintiff's and the Class members' property remains in the University's possession and can readily be returned upon directing Defendants to do so.

54.    Plaintiff has never made a knowing and voluntary waiver of her constitutional rights to be paid just compensation for the taking of her property rights in those funds.

55.    Consequently, Defendants, under the color of state law, has seized and retained property that is beyond their statutory and constitutional authority. These actions are *ultra vires* and unconstitutional.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid tuition for a student to attend in-person class(es) during the Spring 2020 semester at the University of Texas at Austin but had their class(es) moved to online learning (the "Class").

57.    Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendants

have a controlling interest, the legal representative, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

58.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

59.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

60.     The requirements of Rule 23(a)(1) have been met.  The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, Plaintiff estimates there to have been approximately 52,000 students enrolled at the University for the Spring 2020 semester based on the most recent data provided by the University.[19] The identity of all such students is known to the University and can be identified through the University's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

61.     The requirements of Rule 23(a)(2) have been met.  There are questions of law and fact common to the members of the Class including, without limitation:

  a.   Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus, live education, as well as access to certain facilities, organizations, and services throughout the Spring 2020 semester;

---

[19] https://www.utexas.edu/about/facts-and-figures

b.   Whether Defendant complied with the Constitutional requirements for seizing and retaining Plaintiff's and the Class members' property without providing the services that the tuition was intended to cover;

c.   Whether Defendant afforded Plaintiff and the other Class members notice and due process before seizing and retaining their property; and

d.   The amount of damages and other relief to be awarded to Plaintiff and the Class members.

62.     The requirements of Rule 23(a)(3) have been met.  Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus, live education for the tuition they paid that the University stopped providing in mid-March, all while unlawfully retaining the property (funds) of the Plaintiff and Class.

63.     The requirements of Rule 23(a)(4) have been met.  Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

64.     Class certification of Plaintiff's claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus,

be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## **FIRST CLAIM FOR RELIEF**

### **VIOLATION OF 42 U.S.C. § 1983**
### **(On Behalf of Plaintiff and the Class)**

65.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the Class.

67.     Defendant is a state agency pursuant to Texas Education Code § 572.002(10)(B).

68.     The Due Process Clause of the United States Constitution prohibits the State of Texas and the governmental agencies that it forms, such as the University and Regents, from depriving citizens of a protected property interest without due process of law.

69.     Plaintiff and the Class members had a constitutionally protected property interest in the tuition for the semester which were earmarked for in-person education that was not available to them, due to the COVID-19 pandemic and the Defendants' reactions thereto.

70.     Defendants took action affecting Plaintiff and the other Class members' constitutionally protected property interest by seizing and retaining the proceeds from Plaintiff and the other Class members' payment of tuition.

71.     Defendants deprived Plaintiff and the Class members of their protected property interests without due process of law by:

    a.  Failing to provide timely notice to Plaintiff and the Class, whose identity and contact information Defendant either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the tuition;

    b.  Failing to design and implement criteria by which the tuition can be refunded to Plaintiff and the Class in light of the University ceasing or severally limiting all on-campus in-person lectures and activities due to the COVID-19 pandemic; and

    c.  Failing to design and implement a mechanism by which Plaintiff and the other Class members can obtain a refund of the tuition in light of the University's ceasing or severely limiting all on-campus in-person lectures and activities due to the COVID-19 pandemic.

72.     Defendants' failure to comply with the requirements of the Due Process Clause of the United States Constitution in the manners outlined above has resulted in substantial detriment to the Plaintiff and the Class.

73.     Moreover, pursuant to the Takings Clause of the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation."

74.     Defendants violated the Takings Clause in the Fifth Amendment, applied through the Fourteenth Amendment, by failing to return to Plaintiff and the Class that portion of the tuition for which they received no benefit.

75.     Neither Plaintiff nor the Class members have made a knowing and voluntary waiver of their constitutional rights under the Fifth Amendment to be paid just compensation for the taking of their property right in those funds.

76.    Plaintiff and the Class are entitled to just and reasonable compensation for the taking of their property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that judgment be entered in favor of Plaintiff and the Class against Defendants as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff' attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For just compensation in an amount to be determined by the trier of fact;

(d)    For an order of restitution and all other forms of equitable monetary relief;

(e)    Awarding Plaintiff' reasonable attorneys' fees, costs, and expenses;

(f)    Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)    Awarding such other and further relief as may be just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of any and all issues in this action so triable of right.

Dated: July 1, 2020                           Respectfully submitted,

*s/ Gary F. Lynch*
Gary F. Lynch
Edward W. Ciolko

**CARLSON LYNCH LLP**
1133 Penn Avenue

5th Floor
Pittsburgh, PA 15222
P (412) 322-9243
F. (412) 231-0246
E. glynch@carlsonlynch.com
  eciolko@carlsonlynch.com


 */s/ Anthony K. Bruster*

**Anthony Bruster**
TX Bar No. 24036280


**BRUSTER, PLLC**
680 N. Carroll Ave., Suite 110
Southlake, Texas 76092
Telephone:  (817) 601-9564

*Counsel for Plaintiff and Proposed Class*